UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADVANCED LAPAROSCOPIC
SURGERY, P.C.,

    Plaintiff,

v.

CYNOSURE, INC.,

    Defendant.
_____/

Case No. 19-10151

HON. GEORGE CARAM STEEH

## OPNION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS (DOC. 11)

Before the court is Defendant's motion to dismiss Plaintiff's amended complaint. The court heard oral argument on May 20, 2019, and took the matter under advisement. For the reasons stated below, Defendant's motion is denied.

## BACKGROUND FACTS

Plaintiff Advanced Laparoscopic Surgery, P.C. ("ALS"), is a medical practice in Troy, Michigan, that specializes in surgery for weight loss, hernia, reflux, and gallbladder conditions. Plaintiff is run by David M. Chengelis, M.D., a board-certified surgeon. Defendant Cynosure, Inc., develops and markets medical devices.

- 1 -

In the summer of 2018, Cynosure approached ALS to pitch its SculpSure device, which was marketed as a painless fat-reducing procedure. Doc. 9 at ¶¶ 24-25. Cynosure's representative told Dr. Chengelis that SculpSure offered a one-time, twenty-five-minute procedure that would reduce fat by 24%. *Id.* Cynosure's representative stated that Cynosure "had a robust marketing program that would drive patient leads to ALS." *Id.* at ¶ 26. The representative also told Dr. Chengelis that ALS would be the only practice "in the area" with a SculpSure device. *Id.* at ¶ 27. According to Cynosure, the device would "pay for itself quickly because SculpSure would provide 4-5 leads per month and that within six months, ALS would want an additional SculpSure device." *Id.* at ¶ 28.

On July 13, 2018, ALS purchased a SculpSure device for $175,750. ALS attached the purchase agreement, a one-page document, to the complaint. *See* Doc. 9 at ¶ 30.

ALS alleges that after it received the SculpSure device, "interest in the procedure was absolutely non-existent." *Id.* at ¶ 32. ALS contends that Cynosure never hosted a SculpSure "kick-off party" at ALS as promised, nor did it direct patients to ALS. *Id.* at ¶¶ 33-34. ALS further alleges that Cynosure sold SculpSure devices to at least eight medical practices in area

communities such as Berkley, Birmingham, Troy, and Southfield. *Id.* at ¶ 35.

Dr. Chengelis and members of his staff tested the SculpSure by undergoing the procedure. Dr. Chengelis found the procedure to be "excruciatingly painful," as did his staff members. Doc. 9 at ¶¶ 37-39. ALS alleges that no one who underwent the SculpSure procedure experienced any fat loss. *Id.* at ¶ 42. Given the level of pain he experienced, as well as the lack of results, Dr. Chengelis alleges that he cannot ethically recommend that his patients undergo the SculpSure procedure. *Id.* at ¶ 43. ALS sought to return the SculpSure device and obtain a refund, but Cynosure refused.

ALS filed its complaint against Cynosure in state court on December 7, 2018. Cynosure removed the case based upon diversity jurisdiction. In its complaint, ALS alleges the following causes of action: Count I, breach of express and implied warranty; Count II, revocation of acceptance; and Count III, fraud in the inducement. Doc. 9 (amended complaint). Cynosure seeks dismissal of ALS's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

# LAW AND ANALYSIS

I. Standard of Review

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. *See also Hensley Manuf. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

II. Breach of Warranty and Revocation of Acceptance

Cynosure contends that ALS's breach of warranty and revocation of acceptance claims must fail because Cynosure disclaimed all warranties in the purchase agreement. *See* M.C.L. § 440.2316. Under Michigan law, a seller may disclaim implied warranties if the disclaimer is in writing and is conspicuous. *Id.* A buyer may revoke acceptance of a "unit whose nonconformity substantially impairs its value to him." M.C.L. § 440.2608. Revocation of acceptance is a remedy for breach of warranty that a buyer

cannot pursue if the seller disclaimed all warranties. *See Harnden v. Ford Motor Co.*, 408 F. Supp.3d, 309 (E.D. Mich. 2005).

Cynosure argues that the parties' purchase agreement contains a conspicuous disclaimer of express and implied warranties. The purchase agreement ALS attached to the complaint consists of one page and states, above the signature line, that the customer "accepts all of the terms and conditions as stated in this document (including the following page(s)). . . ." Doc. 9-1. Cynosure contends that the purchase agreement contained *two* pages, and that the warranty disclaimers appear on the second page. *See* Doc. 11-7. Cynosure argues that ALS should have been aware of the additional terms and conditions because the purchase agreement referred to "the following page(s)." *See Robert Bosch Corp. v. ASC, Inc.*, 195 Fed. Appx. 503, 505 (6th Cir. 2006) (under Michigan law, parties may incorporate terms and conditions from other writings into their contract).

ALS claims that it never received the second page. Dr. Chengelis states that Cynosure's representative, Garret Gibbons, presented him with a one-page agreement on July 13, 2018. After Dr. Chengelis signed the document, Gibbons left and did not provide him with a copy. Doc. 13-2. On September 6, 2018, Dr. Chengelis asked Gibbons to send him a copy of the agreement. According to Dr. Chengelis, Gibbons emailed him the one-

page document that he had signed and that ALS attached to the complaint. *Id.* at ¶ 8.

In light of these allegations, there is a factual dispute regarding the content of the parties' agreement. Although Cynosure contends that ALS should have been aware of additional terms and conditions based upon the reference to "the following page(s)," ALS alleges that it requested the contract and Cynosure provided it with only one page. Further, the purchase agreement does not purport to incorporate terms and conditions from another document, but rather that the buyer "accepts all of the terms and conditions *as stated in this document*. . . ." ALS alleges that "this document," as twice provided by Cynosure, consisted of only one page. These facts distinguish this case from those where a buyer simply neglects to read or seek an explanation of contractual terms. *See Robert Bosch*, 195 Fed. Appx. at 505. This dispute regarding the terms of the parties' contract renders dismissal pursuant to Rule 12(b)6 inappropriate as to ALS's breach of warranty and revocation of acceptance claims.

III. Fraud in the Inducement

Cynosure also seeks dismissal of ALS's fraud in the inducement claim, alleging that it is barred by the economic loss doctrine. The economic loss doctrine precludes a party to a contract from bringing tort

claims that are factually indistinguishable from its breach of contract claims. The doctrine provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 368-69 (1995).

However, a claim for fraud in the inducement is not barred by the economic loss doctrine, because it presents a "special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other's fraudulent behavior." *Huron Tool*, 209 Mich. App. at 372-73. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008) ("Parties are entitled to bring a fraud-in-the-inducement action when they are induced into entering an agreement on the basis of false representations."). "[A] claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller." *Huron Tool*, 209 Mich. App. at 375. *See also Uhl*, 512 F. 3d at 304 (fraud in the inducement "not available for a

breach of a contract's terms, lest fraud in the inducement swallow all breach-of-contract claims").

ALS alleges that, in response to Dr. Chengelis's concerns about the cost of the device, Cynosure's representative stated that Cynosure had a "robust marketing program that would drive patient leads to ALS." Doc. 9 at ¶ 63. The representative further stated that Cynosure would throw a "kick-off party" at ALS in order to bring patients and that ALS would be the only SculpSure practice "in the area." *Id.* at ¶¶ 64-65. The Cynosure representative told Dr. Chengelis that the "SculpSure machine would pay for itself quickly because SculpSure would provide 4-5 leads per month and that within six months, ALS would want an additional SculpSure device." *Id.* at ¶ 66. ALS alleges that these material representations were false, Cynosure knew they were false, and that it relied on these false representations in agreeing to purchase the SculpSure device.

Contrary to Cynosure's argument, these allegations are not merely breach of contract claims characterized as tort, but are representations outside of the purchase agreement that allegedly induced ALS to enter into the contract. Although the purchase agreement lists a "marketing package" as an option, there is no quantity written in, suggesting that any "marketing package" was not included. Doc. 11-7. Further, the agreement defines the

"marketing package" as "printed and electronic marketing material support including product brochures, print-ready files, web and media files, before and after photos." *Id.* ALS is not alleging that it did not receive brochures or other marketing materials. Rather, ALS alleges that Cynosure misrepresented that it would provide patient leads to ALS in order to induce ALS to purchase a SculpSure device. The contract does not speak to these terms; thus, ALS's fraud the in the inducement claim is factually distinct from its breach of warranty claims and is not barred by the economic loss doctrine.

Cynosure next argues that ALS's fraud in the inducement claim is not pleaded with the requisite particularity. *See* Fed. R. Civ. P. 9(b). To plead fraud with particularity, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Atlas Techs., LLC v. Levine*, 268 F. Supp.3d 950, 962 (E.D. Mich. 2017) (citation omitted). Cynosure asserts that ALS's allegations are insufficient because it does not name the speaker or provide the exact date of the alleged misrepresentations. The complaint alleges specific statements that ALS claims are fraudulent, why they are fraudulent, and that they were made by "Cynosure's representative"

"[b]eginning in the Summer of 2018" at "ALS's offices." Doc. 9 at ¶¶ 24-28, ¶¶ 60-76. Although ALS does not identify the speaker by name, it has provided sufficient detail to give Cynosure notice of its claim. *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC,* 2017 WL 4098853, at *8 (E.D. Mich. Sept. 15, 2017) ("[T]he name of a specific employee need not always be alleged to meet the strictures of Rule 9(b), for example where only one corporation is a named defendant."). ALS has pleaded its fraud in the inducement claim with sufficient particularly to satisfy Rule 9(b).

In its reply brief, Cynosure argues for the first time that any representations made to ALS regarding future potential leads, profits, or exclusivity are not actionable. *See* Doc. 14 at 5. Courts routinely decline to address issues raised for the first time in reply briefs, because the opposing party has not had the opportunity to brief the issue. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.") (citation omitted). Accordingly, the court makes no ruling regarding whether the statements alleged by ALS constitute actionable fraud in the inducement.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's motion to dismiss (Doc. 11) is DENIED.

Dated: May 23, 2019

                                 s/George Caram Steeh
                                 GEORGE CARAM STEEH
                                 UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 23, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---